UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HEARD,

    Plaintiff,

v.

ADRIAN DIRSCHELL, et al.,

    Defendants.
_____/

Case No. 1:24-cv-5

Hon. Hala Y. Jarbou

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is the report and recommendation (R&R) by Magistrate Judge Kent that plaintiff Lamont Heard's motion for a temporary restraining order and preliminary injunction in this action under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, be denied.  (ECF No. 39.)  Heard lodged five objections to that recommendation, none of which are availing.  (Objs., ECF No. 44.)  The Court therefore adopts the R&R.

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).  A motion for a preliminary injunction is assessed with respect to four factors: (1) "whether the party moving for the injunction is facing immediate, irreparable harm"; (2) "the likelihood that the movant will succeed on the merits"; (3) "the balance of the equities"; and (4) "the public interest."  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019).  In cases seeking preliminary relief "on the basis of a potential constitutional violation," a low

probability of success on the merits is "often . . . the determinative factor." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). The factors governing the evaluation of a request for a preliminary injunction and one for a TRO are the same. *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

Heard's first objection is that the R&R is based on "misinformation" and misconstrues his claims. (Objs. 2.) Heard contends that the menu that the Lakeland Correctional Facility, at which Heard is incarcerated, offers to Muslim inmates during Ramadan includes foodstuffs that contravene the dietary restrictions that adherents of the Nation of Islam observe (soy, grits, and beans other than navy beans), and exclude those that adherents traditionally eat (dates and navy beans) during the holy month. His main disagreement is with the magistrate judge's citation to *Spies v. Voinovich*, 173 F.3d 398 (6th Cir. 1999), for the proposition that a prisoner's religious rights are respected when they are offered foods consistent with their religion's dietary restrictions but that the prisoner dislikes.

The Court construes this objection as going to the likelihood-of-success factor. Consequently, the Court addresses Heard's second objection—that the R&R does not subject Lakeland's Ramadan meal program to the scrutiny dictated by RLUIPA—alongside the first. Heard's objections fail because Lakeland's Ramadan menu options do not burden Heard's religious rights.

*RLUIPA.* Because RLUIPA is more protective of prisoners' religious rights than the First Amendment's Free Exercise Clause, *see Fox v. Washington*, 949 F.3d 270, 277 (6th Cir. 2020), the Court begins its analysis with Heard's statutory claim. Under RLUIPA, "an inmate must show that he has a 'sincerely held religious belief' and that the government 'substantially burdened his

2

exercise of religion.'" *Ali v. Adamson*, 132 F.4th 924, 934 (6th Cir. 2025) (cleaned up) (quoting *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)).  Religious exercise is substantially burdened when prisoners face "substantial pressure . . . to modify [their] behavior and to violate [their] beliefs," *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014) (quoting *Hayes v. Tennessee*, 424 F. App'x 546, 555 (6th Cir. 2011)), or when their "sincere faith-based conduct" is "effectively bar[red]," *id.* (quoting *Living Water Church of God v. Charter Township of Merdian*, 258 F. App'x 729, 739 (6th Cir. 2007)).  If an inmate establishes the existence of a substantial burden on their acting in accordance with a sincere religious belief, the onus is on the government to show that the burden is the "least restrictive means of furthering" a "compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (quoting 42 U.S.C. § 2000cc-1(a)).

For Defendants to have substantially burdened Heard's religious exercise, they must have forced him to choose between abiding by the Nation of Islam's dietary precepts and an adequate calorie intake.  It cannot be doubted that RLUIPA guarantees to inmates "an adequate diet" that is consistent with their "religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)).  And Muslim inmates have the right to "a nutritious diet during Ramadan." *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015).  Lakeland undisputedly accommodates the observance of Heard and other Muslim inmates of the sunrise-to-sunset fast during Ramadan by providing them with meals before dawn and after dusk, and it accommodates Muslims' dietary restrictions year-round by providing vegan meals to those who abide by religious diets, including halal and kashrut, *see Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015).  Michigan Department of Corrections policy allows prisoners who are approved to receive religious meals to request that the meal be modified to accord with their particular beliefs.  (ECF No. 41-14 at PageID.297.)  Defendants denied Heard's

3

request to modify the vegan Ramadan menu because he was not on the year-round vegan religious meal line.  (ECF No. 47-2 at PageID.414.)

Heard has not shown that this policy abridged his religious rights.  To begin, Heard has not established that he would be underfed if he refrained from eating the foods he claims violate the Nation of Islam's teachings during Ramadan.  Although the evidence submitted in connection with Defendants' motion for summary judgment indicates that removing the foodstuffs that Heard objects to would drop the daily caloric value of the vegan Ramadan meal line to around 1,600 calories (ECF No. 41-7, at ¶ 16)—a calorie ration that falls short of what the Sixth Circuit has elsewhere suggested is the constitutional minimum of 2,000 to 2,500 calories, *see Welch*, 627 F. App'x at 483—there is no evidence of how frequently his caloric intake would exceed or fall below that average.  That is relevant because "nutritional adequacy is a multi-factored concept" that turns on a balanced assessment of "daily caloric content, duration of the diet, and the nutritional needs of the prisoner," among other considerations.  *Id.*  In addition, Heard appears to have the resources to supplement his prison-provided meals with food from the commissary, at least if his commissary purchases from 2020 and 2021 are any indication (ECF No. 41-15).  *See Ackerman v. Washington*, 16 F.4th 170, 187 n.8 (6th Cir. 2021) ("[P]erhaps in the right case, food options at a commissary might render any burden insubstantial.").  The Court is without a sufficient basis for concluding that the existing vegan Ramadan menu substantially burdens Heard in any way.

But even if it is assumed that the vegan Ramadan meal would be inadequate to Heard's nutritional needs, Heard has not shown why Defendants were not entitled to reject Heard's request for an alternative meal on the grounds that he was not on the vegan religious meal line throughout the rest of the year.  Heard's request to alter the vegan Ramadan meal in 2020 was constructively denied when it was determined that he was ineligible for the religious meal line because he made

4

commissary purchases inconsistent with his ostensible religious beliefs, including buying foodstuffs containing pork byproducts like Rice Krispies treats and soy products such as soy sauce. (See ECF No. 47-16, at ¶ 1.)  There is no evidence that Heard attempted to enroll in the religious meal line after 2020, even though he was eligible to renew the request one year after the constructive denial.  *Ali v. Adamson*, 132 F.4th 924, 934 (6th Cir. 2025).  The prison administration was entitled to require evidence of Heard's religious sincerity before allowing him to submit a request for an alternative meal plan that would impose meaningful costs on the prison's budget and increase the complexity of meeting prisoners' nutritional needs.  *See Haight*, 763 F.3d at 565–66.  Defendants did not substantially burden Heard's observance of Nation of Islam dietary restrictions by rejecting his proposed modifications to the vegan Ramadan menu.

On the other hand, although Heard is not currently on the religious meal line, he provides no explanation for why the regular, nonvegan Ramadan meal is also inconsistent with his religious beliefs.  Heard need not be on the religious meal line to opt into the regular Ramadan meal, but there is no indication he has ever attempted to do so.  (*See* Heard Dep. 36, ECF No. 41-6.)  Heard is apparently receiving adequate nutrition during the rest of the year on the regular meal, even though, as a vegetarian, he presumably refrains from eating any meat served with his meals.  As far as the record shows, the only difference between the regular meal during Ramadan and the regular meal outside of Ramadan is that the former is served at the ritually appropriate times (before and after daytime hours).  Heard has not given any reason for thinking that the regular Ramadan meal would not meet his dietary scruples, further undermining the suggestion that Lakeland or Defendants have substantially burdened his religious exercise.

Finally, RLUIPA's protection of religious rights does not obligate prisons to provide inmates with ritually significant foods.  That Muslims are not given dates with which to break the

fast or bean pies instead of other desserts imposes no *burden* on Muslims' observance of Ramadan; there is no suggestion that Lakeland prisoners have ever been prohibited from obtaining dates or bean pies through other avenues or from consuming them at appropriate times.  *Cf. Ackerman*, 16 F.4th at 185 (describing intersecting regulations impeding Jewish prisoners' ability to eat meat and dairy as part of their holiday meals).  Accordingly, the Court finds that no substantial burden has been placed on Heard's acting in accordance with the dictates of his faith.  Heard's RLUIPA claim therefore fails.[1]

*Free exercise.*  Heard's claim under the Free Exercise Clause also fails.  A four-factor test is used to determine if a prison regulation that restricts a constitutional right is valid.  First is "whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; second is the existence of "alternative means of exercising the right that remain open to prison inmates"; third is the "impact that accommodation of the asserted constitutional right will have on" others in the prison environment; fourth is the ready availability of "alternatives at a de minimis cost to valid penological interests."  *Green v. Tudor*, 685 F. Supp. 2d 678, 697 (W.D. Mich. 2010) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  No one factor is determinative.  *Spies*, 173 F.3d at 403.

There is no free-exercise violation in this case.  First, there is an eminently reasonable connection between the interest in maintaining prison discipline, economic efficiency, and administrative simplicity and a policy against modifying standardized prison meals at the instance of those who have not demonstrated their religious sincerity.  Second, those who wish to adhere

---

[1] Heard's complaint alleges that Defendants' failure to provide him with foods traditionally consumed by Muslims during Ramadan is also a denial of equal protection because prisoners of other faiths, such as Jewish prisoners on Shavuot, *see Ackerman*, 16 F.4th at 183, are entitled to special holiday foods. (Compl. ¶¶ 28–30, ECF No. 1.)  Heard did not invoke equal protection in his motion for preliminary relief or contend in his objections that the magistrate judge erred in ignoring the issue in the R&R, so the Court declines to consider the likelihood of Heard's succeeding on the merits of his equal protection claim.

to the Nation of Islam's dietary teachings are in no way barred from doing so by the vegan Ramadan meal menu, as they can supplement the meals the prison provides with foods obtained from the prison commissary or from friends and family. The fact that Heard can receive dates and bean pies from friends and family or outside religious organizations is why *Spies*, which the R&R cited for the proposition that the absence of those foodstuffs from the Ramadan menus does not render them legally deficient (R&R 6), is on point. *See* 173 F.3d at 407. Third, allowing any prisoner to request an alternative meal plan during days of religious significance is highly likely to encourage more requests—requests that the prison cannot universally satisfy, not least because of the expense of formulating customized meals for each religious group. Finally, any alternative policy is likely to have negative financial and disciplinary effects, so there are no obvious alternatives to standardized treatment. With all factors pointing toward "deference" to "the judgment of prison administrators" in determining how best to accommodate prisoners' religiously dictated dietary restrictions, *see O'Lone v. Est. of Shabazz*, 482 U.S. 342, 350 (1987), the Court finds that Heard's free-exercise rights have not been abridged. Accordingly, the likelihood that Heard will succeed on the merits of either of his religious-liberty claims is low. Heard's first and second objections are overruled.

    Heard's third objection is that the R&R's analysis of whether Heard will suffer irreparable injury from being denied an alternative Ramadan meal plan is based on the same misunderstanding that Heard identified in his first, namely, that the vegan Ramadan meal contains foods that are incompatible with the Nation of Islam's dietary precepts and not merely foods that Heard dislikes. Because the Court has already concluded that Heard has not shown that his sincere religious exercise is substantially burdened by the existing Ramadan menus, the Court finds that Heard will

7

not be irreparably harmed by being constrained to sign up for the religious meal line before submitting an alternative Ramadan plan, or by signing up for the regular Ramadan meal.

Heard's fourth and fifth objections are meritless. It was well within the magistrate judge's authority to excuse the filing of Defendants' opposition to the motion for preliminary relief four days late, particularly when Heard has not pointed to any concrete prejudice caused by the short delay. *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 429 (6th Cir. 2006) ("[M]ere inadvertence may warrant an enlargement of time under Rule 6(b)."). And Heard's suggestion that directing Defendants to craft an alternative Ramadan menu especially for Heard would not interfere with the day-to-day administration of the Lakeland facility is a nonstarter. That the courts may act when prisoners' religious rights are genuinely threatened does not render the judiciary's interposition of itself between a prisoner and the authority responsible for their supervision any less an interference. *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979). Heard's failure to show that interference is warranted in the instant case disposes of his last objection.

**IT IS ORDERED** that the report and recommendation (ECF No. 39) is **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Heard's motion for a temporary restraining order or preliminary injunction (ECF No. 19) is **DENIED**.

Dated: September 23, 2025            /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     CHIEF UNITED STATES DISTRICT JUDGE