UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HEARD,

          Plaintiff,

v.

ADRIAN DIRSCHELL,
JEREMY BUSH, and
WILLIS CHAPMAN,

          Defendants.

_____/

Case No. 1:24-cv-5

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by plaintiff Lamont Heard, a prisoner in

the custody of the Michigan Department of Corrections (MDOC).  The incidents in this lawsuit

occurred at the MDOC's Lakeland Correctional Facility (LCF).  Plaintiff  sued MDOC Special

Activities Coordinator (SAC) Adrian Dirschell, MDOC Deputy Director Jeremy Bush, and

MDOC Assistant Deputy Director Willis Chapman.[1]  This matter is now before the Court on

motions for summary judgment filed by plaintiff (ECF No 27) and defendants (ECF No. 40).

### I.    Plaintiff's claims

Plaintiff's lawsuit challenges the Ramadan menu provided by the MDOC as well

as SAC Dirshell's actions regarding plaintiff's request for religious menus in 2020, 2021, 2023

and 2024.  Compl. (ECF No. 1, PageID.1-10).  On initial screening, the Court summarized

plaintiff's claims as follows:

> Plaintiff is a practicing Muslim whose religion mandates that he fast during
> the month of Ramadan. (ECF No. 1, PageID.3.) Plaintiff alleges that the MDOC

---

[1] Plaintiff incorrectly refers to Assistant Deputy Director Chapman as "Deputy Director".    *See* Compl. (ECF No. 1, PageID.2-3).

1

provides Muslim prisoners seeking to fast during Ramadan with a "religious menu," but "burdens and infringes" on the Muslim practice by "intentionally placing food items on the Ramadan menu that they know Muslims are prohibited under Islamic law to eat, such as soy, grits and all beans except the navy beans." (*Id.*)

Opinion (ECF No. 6, PageID.30).

The Court allowed plaintiff to proceed against SAC Dirschell in his individual capacity for alleged violation of the First Amendment (free exercise) and Fourteenth Amendment (equal protection and due process).  The Court also allowed plaintiff to proceed for injunctive relief against SAC Dirschell, Deputy Director Jeremy Bush, and Assistant Deputy Director Chapman in their official capacities for violations of the First Amendment (free exercise), Fourteenth Amendment (equal protection), and RLUIPA.  *See id*. at PageID.34, 36, 37, 41; Order (ECF No. 17, PageID.92).

Plaintiff's claims began in March 2020.  Heard Dep. (ECF No. 41-6, PageID.255).  Plaintiff is member of the Nation of Islam ("NOI") and follows dietary regimen set forth in *How to Eat to Live* and the Holy Quran.  Compl. at PageID.2; Heard Dep. at PageID.256-257. Plaintiff challenges the content of the Ramadan menu provided by the MDOC. *See* Compl. at PageID.1-10.  During Ramadan, the MDOC provides a meal that comes before dawn and a meal that comes after sundown. Angela Panetta Decl. at ¶ 12 (ECF No. 41-7, PageID.272-273).[2]  Plaintiff contends that the Ramadan menu contains food that he cannot consume as a member of the NOI.  Compl. at PageID.1-10.  Specifically, plaintiff claims that he cannot consume soy, grits, beans (except navy beans), peanut butter, celery, excessive sweets (such as "excessive" cakes and cookies), "bleached bread" (not sure about "white bread"),  and oatmeal.  Heard Dep. at PageID.260-263; Compl. at PageID.3.

---

[2] Angela Panetta is a Registered Dietician with the MDOC.  Panetta Decl. at PageID.271.  Her involvement with the Ramadan menu "is to ensure the items on the menu meet the nutritional and caloric needs of prisoners."  *Id*.

To remedy the situation, plaintiff contacted MDOC officials in 2020. SAC Dirschell received the an email from Chaplain Hollingsworth on March 20, 2020, outlining a Ramadan meal proposal from plaintiff.  Dirschell Decl. (ECF No. 45, PageID.369).  The request was for an "alternative diet" at Ramadan, outlining food items which plaintiff claimed were prohibited ("soy, beans other than navy beans, grits, oatmeal, sweets, and peanut butter").  *Id*.

As an initial matter, plaintiff's complaint misidentified defendant Chapman, alleging that Chapman "is the MDOC deputy director and is responsible for consideration religious accommodation requests, approving or denying them" and "is responsible for approving the Ramadon [sci] menu."  Compl. at PageID.2-3.  Contrary to plaintiff's allegation, Chapman is the MDOC Assistant Deputy Director.  But, "Per MDOC Policy Directive 05.03.150, requests for an alternative menu are considered by the CFA *Deputy Director*".  Chapman Decl. (ECF No. 41-4, PageID.242) (emphasis added).   As Assistant Deputy Director, Chapman is not involved in "considering, approving or denying alternative religious requests."  *Id*.  There is no evidence that Chapman was involved in the alleged denial of plaintiff's requests related to the Ramadan menu.

Defendant Deputy Director Bush approves alternate religious menus.  *See* Bush Decl. at ¶ 13 (ECF No. 41-3, PageID.236) ("Per MDOC Policy Directive 05.03.150, I approve all alternative religious menus.").

Defendant SAC Dirschell advises Bush by assembling information for the alternate menu requests:

> 9. In my position, I make decisions regarding access to the religious menu, I do not make decisions related to alternative meal requests, whether for Ramadan or everyday meals.

> 10. I do, however, act in an advisory capacity and put together the information and other relevant documents that get sent to the Deputy Director for consideration.

*Id*.

Dirschell stated that "[t]he MDOC already feeds Muslims and various other religious groups every day through vegetarian options and the religious meal line, and the religious line meets both Kosher and Halal tenets." *Id*. at PageID.370.  In this regard, "[t]he MDOC updated their policy to require those seeking an alternate menu, to already be on a religious diet" and that an individual seeking an alternative menu "must present information as to why the available religious diet does not meet their religious needs." *Id*. at PageID.369-370.

While assembling information for the 2020 Ramadan request, Dirschell noted that plaintiff was not on a religious diet and had not been on a religious diet since April 17, 2015 (having been removed from the religious diet after violations in March 2015). *Id*. at PageID.369. Although plaintiff was requesting "an alternative diet" for Ramadan, the concept was the same as requesting an alternate menu, *i.e.*, "[h]e was not on the religious meal plan, had been previously removed for non-compliance, yet was asking the MDOC to alter a menu that follows the religious meal plans already in place within the MDOC." *Id*. at PageID.370. Similarly, Deputy Director Bush explained in his declaration (ECF No. 41-3, PageID.236-237):

13.   Per MDOC Policy Directive 05.03.150, I approve all alternative religious menus.

14.  The MDOC already feeds Muslims and various other religious groups every day through vegetarian options and the religious meal line, and the religious line meets both Kosher and Halal tenets.

15.  Here, although Heard was requesting an alternate diet for Ramadan, the concept is the same. He was not on the religious meal plan at the time at issue in this lawsuit, as he had been previously removed for non-compliance, yet he is asking the MDOC to alter a menu that follows the religious meal plans already in place within the MDOC.

Neither Dirschell nor Bush state in their declarations that plaintiff had to be on a religious menu, religious diet, religious meal plan, or religious meal line to make an alternative meal request for Ramadan.

4

On March 23, 2020, Dirschell sought additional information through the Chaplain about plaintiff's request and why the current Ramadan meal did not meet his religious needs. *Id.* In evaluating such requests, Dirschell has to determine whether the prisoner's request for a religious menu or alternative diet is the result of a "sincere religious belief." To evaluate a prisoner's sincerity regarding a necessary religious diet, Dirschell reviews the prisoner's commissary purchases to determine whether they purchase food which violates their purported religious diet. Dirschell explained,

> 18. Someone who has sincerely held religious beliefs will abide by those beliefs, or at least try to, even when no one is looking.
>
> 19. It is understandable that someone may slip occasionally or accidentally purchase something they don't realize has a prohibited ingredient. But overall, you can get a good sense from the purchases, whether they are sincerely trying to follow religious dietary restrictions.

*Id.*

Dirschell is "very familiar with the Nation of Islam diet as set forth in the book, 'How to Eat to Live' and the dietary restrictions are the strictest of any religious group." *Id.* at PageID.371. Upon reviewing plaintiff's commissary purchases, Dirschell concluded that plaintiff violated the NOI's dietary restrictions on a regular basis:

> 21. I reviewed Heard's store purchases and immediately noticed Heard routinely purchased soy sauce, peanut butter, jelly (which contains both sugar and pork byproducts) that would be prohibited, and refried beans, which are not "navy beans."
>
> 22. Upon further review, his purchase history contained substantial purchases that violate the Nation of Islam dietary restrictions. Other products he purchased that contain pork biproducts [sic] are Rice Krispie Treats and marshmallows. Pork Products are forbidden based on Elijah Muhammad's teachings.
>
> 23. Nation of Islam members do not eat white potatoes, but he purchased potato chips on a regular basis. They do not eat white rice, but he purchased white rice. They do not eat corn, but he purchased corn chips. They do not eat sweets, but he

5

purchased cookies and candies and sugar beverages that all violate Nation of Islam dietary restrictions.

24. Most of the items Heard purchased violated the very diet he was asking the MDOC to craft for him for Ramadan.

25. In my position, I am to ensure that each request for an alternate diet that gets submitted for consideration meets the requirements for consideration.

26. Heard did not qualify for an alternate diet based on his own clear violations.

*Id*.  Plaintiff contests defendant's list of prohibited food and contends that some of these items do not violate NOI dietary restrictions.  *See* Heard Decl. (ECF No. 47-16) (referring to soy sauce, peanut butter, refried beans and Rice Krispie treats).  In addition, plaintiff stated that he purchased some of these items for others.  *Id*.

On April 7, 2020, Dirschell sent an email to Chaplain Hollingsworth to notify plaintiff that his request for an alternative diet was denied.  *Id*.  at PageID.372.  Hollingsworth responded that same day "I will."  Email (ECF No. 41-12, PageID.285).

The next year, on February 8, 2021, Chaplain Hollingsworth sent SAC Dirschell an email and attached correspondence from plaintiff which referred to the 2021 Ramadan menu.  *Id*. According to Dirschell,

29. Upon review, nothing had changed. Heard was still routinely purchasing the prohibited foods he claimed he could not eat, which means he does not seem sincere in his need for any religious diet.

30. Even prisoners who attempt to obtain religious meals are denied for the level of violation Heard shows through his purchases. There was no reason to look any further. Heard's request was not sincere, and the answer was the same as it had been the year before.

*Id*.

Dirschell also stated that there is no evidence to support plaintiff's claim that he sent Dirschell kites in January 2023 and January 2024,

6

> I reviewed Content Manager, an MDOC database where kites are transmitted to me, as I am not assigned to any prison facility. I could not locate any correspondence from Heard for either date.

*Id*.  In his response to defendants' motion for summary judgment, plaintiff included documents to support his claims for 2023 and 2024.   Plaintiff included a copy of a grievance filed against "MDOC Deputy Director and CFA Special Activity Coordinator for constructively denying grievant's request to remove food items from the Ramadan Religious Menu that violate the tenets of plaintiff's faith" (ECF No. 47-7, PageID.420).  The grievance number and date are illegible, although it appeared to be returned to plaintiff (grievant) sometime in 2023.  *Id*.  Plaintiff also included a memo to "Deputy Director" and "Special Acts Dirschell" dated January 1, 2024 "Re: Ramadan Menu Change Proposal" (ECF No. 47-8, PageID.421).  While there are no proposals attached, plaintiff requested "that you [sic] answer the proposals" or he will seek $40,000 for each year his rights were violated and "enhanced protections" under RLUIPA.  *Id*.  The document does not indicate how or when it was delivered.  *Id*.

Finally, as discussed, *infra.*, plaintiff presented evidence that he requested a modification of the Ramadan menu on August 26, 2025; that Dirschell denied the request on October 8, 2025; that Chaplain Hollingsworth sent plaintiff a response for an appeal on or about October 14, 2025 which appears to state, "You do not have to be on the religious menu to request a change"; and, that  Hollingsworth advised plaintiff that a religious accommodation appeal (CSJ-997) "was submitted to Lansing".  *See* Documents (ECF Nos. 57-1 and 57-2); Memo (Dec. 9, 2025) (ECF No. 77-1).

## II.    Motions for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is

genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to
> support the nonmoving party's case.  Once the moving party has met its burden of
> production, the nonmoving party cannot rest on its pleadings, but must present
> significant probative evidence in support of the complaint to defeat the motion for
> summary judgment. The mere existence of a scintilla of evidence to support
> plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.    Plaintiff's motion for summary judgment

Within days after the Court entered the case management order, plaintiff filed a

motion for summary judgment on the merits of the case (ECF No. 27).  Plaintiff's motion is

premature. *See Plott v. General Motors Corporation, Packard Electric Division*, 71 F.3d 1190,

1195 (6th Cir. 1995) ("Before ruling on summary judgment motions, a district judge must afford

the parties adequate time for discovery, in light of the circumstances of the case.").  Accordingly,

this motion should be denied.  In reaching this determination, plaintiff's position has been fully

briefed and considered with respect to defendants' motion for summary judgment which was filed after the close of discovery.

### IV.    Defendants' motion for summary judgment

### A.    Assistant Deputy Director Chapman

Assistant Deputy Director Chapman had no involvement in plaintiff's requests for an alternative Ramadan menu. As discussed, SAC Dirschell assembled information for the decisionmaker, Deputy Director Bush.  Accordingly, defendant Chapman should be granted summary judgment on all claims.

### B.    Constitutional claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.  Here, plaintiff contends that defendants violated his rights under the First Amendment (free exercise) and Fourteenth Amendment (equal protection and due process).

### 1.    Statute of limitations

Defendants contend that some of plaintiff's claims are barred by the statute of limitations.  State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich.

Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Accrual of the claim for relief is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). "[T]he statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Id*.

As discussed, plaintiff made requests for modifications to the Ramadan menus commencing in 2020. Plaintiff's complaint was docketed on January 2, 2024, and considered filed when he signed the complaint on December 27, 2023.[3] Compl. at PageID.1, PageID.8. Plaintiff's claims regarding Ramadan 2020, which SAC Dirschell reviewed in March and April 2020 could be barred by the three-year statute of limitations. Based on the record, plaintiff was aware of the injury by February 2021, when he filed a request related to the 2021 Ramadan menu. However, defendants present only a conclusory argument on this issue based upon the wrong filing date for the complaint. *Se*e Defendants' Brief at PageID.207 (referring to the filing date of the complaint as March 5, 2024). Accordingly, defendants' motion should be denied with respect to the statute of limitations.

### 2. Discussion

### a. Qualified Immunity

SAC Dirschell contends that he is entitled to qualified immunity on plaintiff's § 1983 claims. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[3] Under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted).

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor." *Id*. "When, as here, a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

### b.    First Amendment free exercise claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. Amend I. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, a plaintiff must establish (1) that the belief or practice he seeks to protect is religious

11

within his own "scheme of things," (2) that his belief is sincerely held, and (3) that defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903 at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

With respect to food, "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (internal quotation marks omitted). "[T]his is essentially a constitutional right not to eat the offending food item." *Alexander v. Carrick*, 31 Fed. Appx. 176, 179 (6th Cir. 2002). Thus, "[i]f the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Colvin*, 605 F.3d at 290 (internal quotation marks omitted).

SAC Dirschell contends that he is entitled to qualified immunity because he lacks the requisite personal involvement in plaintiff's constitutional claims. "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Here, plaintiff's First Amendment claim fails because SAC Dirschell did not have authority to grant or deny plaintiff's request for an alternate Ramadan menu. As discussed, *supra*, that decision is made by Deputy Director Bush. *See, e.g., Poppy v. City of Willoughby Hills*, 96 Fed. Appx. 292, 295 (6th Cir. 2004) (holding that since the mayor "was not the decisionmaker, he cannot be held liable under § 1983 for the City Council's decisions regarding [Plaintiff's] terms and conditions of employment").

Plaintiff has failed to establish a First Amendment claim against SAC Dirschell. Accordingly, Dirschell's motion for summary judgment should be granted on this claim. In the absence of a constitutional violation, there is no basis for injunctive relief.

### c.      Fourteenth Amendment equal protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "Similarly situated"  is a term of art, the comparator must be similar in all relevant respects.  *See Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015.)

As this Court stated in screening plaintiff's complaint:

> "The threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Discriminatory intent or purpose is also required, but "an invidious purpose may be inferred" where a classification "impinge[s] upon the exercise of a fundamental right." *Koger v. Mohr*, 964 F.3d 532, 544-45 (6th Cir. 2020) (quoting *Maye v. Klee*, 915 F.3d 1076, 1085-86 (6th Cir. 2019)).

Opinion at PageID.36.

Plaintiff alleged that while "[d]efendants accommodate those of the Judaic faith by publishing a fasting menu that consists of food items that that [sic] accommodate the Judaic faith holiday regimen" they "discriminate against Plaintiff, because he is a Muslim and by not accommodating plaintiff's sincerely held beliefs."  Compl. at PageID.5.  Plaintiff repeated this assertion in his deposition, stating that the MDOC "accommodates dietary needs of both Christians and Jews, but does not do so for the Nation of Islam during Ramadan . . . they accommodate their ceremonial or religious food, tenets of their faith, but they don't do the same for Muslim."  Heard Dep. at PageID.258-259.

Plaintiff's equal protection claim against SAC Dirschell is based on the premise that Jews, Christians, and Muslims are similarly situated with respect to religious holidays and dietary rules.   Plaintiff's claim fails because these groups are not "similarly situated" to Muslims in the context of Ramadan meals.  As this Court observed in one of plaintiff's previous lawsuits involving Ramadan, "Muslim inmates and Jewish inmates were not similarly situated for purposes of Equal Protection claims simply because they had distinctive religious diets which involved fasting or dietary restrictions." *Heard v. Finco*, No. 1:13-cv-373, 2016 WL 8668513 at *8 (Nov. 4, 2016), *R&R adopted in part*, 2017 WL 631600 (W.D. Mich. Feb. 16, 2017).  *See, Hearn v. Kennell*, No. 07-1235, 2009 WL 3460455 at *6 (C.D. Ill. Oct. 22, 2009) ("[T]he plaintiff [a Muslim inmate] is not similarly situated to the Jewish inmates. The dietary restrictions of Muslims are not the same as those of the Kosher diet for Jewish inmates.").  *See also, Small v. Secretary Pennsylvania Department of Corrections*, 592 Fed. Appx. 62, 64 (3d Cir. 2014) ("inmates seeking to participate in Ramadan are not similarly situated to inmates seeking to participate in the Jewish fasting days, and the prison did not violate the Equal Protection Clause by treating such inmates differently").

In summary, plaintiff has not shown that SAC Dirschell violated the Equal Protection Clause by failing to provide him with a requested religious diet.   In the absence of a constitutional violation, there is no basis for injunctive relief.

### d. Fourteenth Amendment due process

The gist of plaintiff's claim is that SAC Dirschell's failure to act on his request for an alternative Ramadan menu amounted to a constructive denial of the request in violation of the due process clause.  *See* Compl. at ¶ 16, PageID.3 (alleging that "Since 2020, plaintiff has submitted request to have the prohibited food items removed from the Ramadan menu"); Compl.

at PageID.5-6 (defendants refused to make a recommendation and/or final determination on plaintiff's religious accommodation request).

To establish a procedural due process violation, a plaintiff must demonstrate,

1) a liberty or property interest protected by the due process clause; 2) a deprivation of that protected interest within the meaning of the due process clause; and 3) defendant['s] failure to afford adequate procedural rights prior to the deprivation.

*Russell v. Wilkinson*, 79 Fed. Appx. 175, 178 (6th Cir. 2003).

To claim a constitutionally protected liberty interest, an inmate must show that the actions of prison officials either had the effect of altering the length or term of imprisonment or amounted to "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Id*.

An unreasonable delay in responding to a request for accommodation may amount to a denial of that accommodation. *See Byrd v. Haas*, 17 F.4th 692, 698 (6th Cir. 2021). "[A] government agency cannot simply end-run judicial review by sitting on its hands and allowing a claimant's request to languish in a bureaucratic black hole." *Id*. at 697-98. Nevertheless, "constructive denials are—and should remain—rare." *Id*. at 698. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Id*. at 699 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "This may include considering the length of the delay, any reasonable justification for the delay, and the nature of the interest involved." *Id*.

As discussed, on April 7, 2020, SAC Dirschell sent an email to Chaplain Hollingsworth asking him to notify plaintiff "that his request for an alternative diet cannot be processed as he is not currently on a religious diet," and Hollingsworth stated, "I will." *See* Email

at PageID.285.   In denying plaintiff's motion for a preliminary injunction, this Court characterized plaintiff's 2020 request as a constructive denial stating that:

> Heard's request to alter the vegan Ramadan meal in 2020 was constructively denied when it was determined that he was ineligible for the religious meal line because he made commissary purchases inconsistent with his ostensible religious beliefs, including buying foodstuffs containing pork byproducts like Rice Krispies treats and soy products such as soy sauce. (See ECF No. 47-16, at ¶ 1.)

*Heard v. Dirschell*, No. 1:24-cv-5, 2025 WL 2701325 at *2 (W.D. Mich. Sept. 23, 2025).[4]  In the cited exhibit, ECF No. 47-16, ¶ 1 (Heard Decl. at PageID.431-432), plaintiff contests Dirschell's evaluation of the commissary purchases:

> 1.  I did purchase soy sauce, peanut butter, refried beans and Rice Krispie Treat. However I purchased them to pay debts I owed.  People wanted specific items to barter.  I was not told these purchases were the reason for the proposal not being processed.  Had I known I would had stop [sic] purchasing them though my religion does not prohibit me from purchasing them.

With respect to the February 8, 2021 claim, Dirschell states that Hollingsworth sent him an email and attached correspondence from plaintiff which referred to the 2021 Ramadan menu.   PageID.372.   Dirschell's declaration does not address his response to the request, submission of a recommendation, or passing the new request on to the decisionmaker.  Finally, while Dirschell had no record of any kites from plaintiff filed in 2023 and 2024, plaintiff presented evidence of a grievance filed in 2023 and a document allegedly sent to Dirschell in 2024.

Based on this record, genuine issues of material fact exist as to whether SAC Dirschell's actions constructively denied plaintiff's requests for Ramadan meals in 2020, 2021,

---

[4] The Court notes that this determination made in the context of a preliminary injunction is not dispositive of plaintiff's 2020 constructive denial claims.  *See William G. Wilcox, D.O., P.C. Employees' Defined Benefit Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) ("As a general rule, decisions on preliminary injunctions do not constitute law of the case and parties are free to litigate the merits.") (internal quotation marks omitted).

2023, and 2024. Accordingly, Dirschell's motion for summary judgment should be denied as to the Fourteenth Amendment due process claim.

### C.    RLUIPA

Plaintiff seeks relief under RLUIPA because "defendants are burndening [sic] the practice of plaintiff's sincerely held belief", "[t]hey are placing food items on the Ramadan menu that they know Muslims are prohibited to consume" and "[d]efendants have no legitimate justification to maintain a Ramadan menu that they know violates Islam regimen during Ramadan."  Compl. at PageID.6.

> RLUIPA prohibits a State from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling governmental interest" and "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc-1(a). That makes the statute a three-act play. In Act One, the inmate must demonstrate that he seeks to exercise religion out of a "sincerely held religious belief." *See Holt v. Hobbs*, ⸺ U.S. ⸺, 135 S. Ct. 853, 862, 190 L.Ed.2d 747 (2015). In Act Two, he must show that the government substantially burdened that religious exercise. *Id*. In Act Three, the government must meet the daunting compelling-interest and least-restrictive-means test. *Id*. at 863.

*Cavin v. Michigan Department of Corrections*, 927 F.3d 455, 458 (6th Cir. 2019).

RLUIPA was not intended to eliminate all burdens on religious exercise.  Rather, RLUIPA "alleviates *exceptional* government-created burdens on private religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (emphasis added).  RLUIPA does not define the term "substantial burden." *See Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx, 729, 733 (6th Cir. 2007).  However, Courts have developed a working definition.

> [T]he Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion [1] when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or  [2] when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]"

*Id*. at PageID.734.  On the other hand, the Supreme Court "has found no substantial burden when, although the action encumbered the practice of religion, it did not pressure the individual to violate his or her religious beliefs."  *Id*.  Finally, if the plaintiff has shown that the government substantially burdened his exercise of religion, the burden shifts to the government to show that its action "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." § 2000cc–1(a)." *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (alterations in original).

Here, plaintiff asks the Court to issue an injunction under RLUIPA to create an individualized Ramadan menu for him. The current "religious menu" procedure is addressed in MDOC PD 05.03.150 "Religious beliefs and practices of prisoners") (eff. March 26, 2025) (ECF No. 41-14).  The policy states that the MDOC "offers a statewide standardized religious menu to meet the religious dietary needs of prisoners" at various facilities.   PD  05.03.150 ¶ TT (PageID.297).  "The religious menus shall comply with Kosher and Halal religious tenets."  *Id*.

> A prisoner may eat from a religious menu only with approval of the CFA SAC. Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs. To request approval, the prisoner must submit a written request to the Chaplain using the Offender Religious Accommodation Request/Appeal Form (CSJ-997). A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year from the date of denial.

*Id*. at ¶ UU.

A prisoner's request for an "alternative menu" involves a separate procedure as set out in ¶ TT:

> A prisoner who has been approved for a religious menu and who believes the statewide standardized religious menus do not meet their religious or dietary needs may request an alternative menu using either the Offender Religious Accommodation Request/Appeal Form (CSJ-997) or Offender ADA Reasonable Accommodation Request/Appeal Form (CSJ-562). An alternative menu will be developed and provided only with approval of the CFA Deputy Director and only

18

if it is determined that the statewide religious menus do not meet the religious dietary needs of the prisoner. All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals and Food Quality Assurance." The CFA Deputy Director or designee shall determine at which facilities religious meals will be offered.

*Id*. at ¶ TT.

Both SAC Dirschell and Deputy Director Bush stated that plaintiff's request for an "an alternative diet" for Ramadan involves the same "concept" as requesting an alternate menu rather than the MDOC's available religious diet.  Dirschell Decl. at PageID.370; Bush Decl. at PageID.237.

Defendants contend that plaintiff lacks a sincere religious belief to support a RLUIPA violation because plaintiff's commissary purchases demonstrate that he does not follow the NOI's dietary restrictions.  As discussed, SAC Dirschell pointed out that plaintiff routinely purchased food which was explicitly forbidden by the NOI including soy sauce, peanut butter, jelly (which contains both sugar and pork byproducts), refried beans (not "navy beans"), Rice Krispie Treats and marshmallows (containing pork byproducts), potato chips, white rice, corn chips, and sweets (including cookies, candies and sugar beverages).  PageID.371.  However, plaintiff contests Dirschell's list of prohibited food and contends that some of these items do not violate the NOI's dietary restrictions.  *See* Heard Decl. (ECF No. 47-16) (referring to soy sauce, peanut butter, refried beans and Rice Krispie treats).  In addition, plaintiff stated that he purchased some of these items for others.  *Id*. at PageID.431-432.

Based on this record, a genuine issue of material fact exists as to whether plaintiff lacked a "sincere religious belief" based upon his purchase of food from the commissary. However, it is unnecessary to address that issue of fact.  Even if the Court assumes that plaintiff has a sincere religious belief, his RLUIPA claim fails.  This Court previously reviewed the

RLUIPA arguments in denying plaintiff's motion for a preliminary injunction.  *See* Order (ECF No. 49). The Court finds that a similar analysis applies to plaintiff's RLUIPA claim based on a complete review of the record.

Muslim inmates have the right to "a nutritious diet during Ramadan." *See Welch v. Spaulding*, 627 Fed. Appx. 479, 483 (6th Cir. 2015).   At the MDOC, prisoners receive two meals per day during Ramadan.  Panetta Decl. at PageID.272.

> One meal is provided before the sun comes up for them to consume before the sun comes up. The second meal (consisting of two bags) is provided so prisoners can consume it after sunset. After sunset they receive 2 bags, a dinner bag and then another, second meal bag. The prisoners receive a total of three bags per day. The three bagged meals are the equivalent in terms of calories of the three meals provided to prisoners who are not on the Ramdan menu.

*Id*. at PageID.272-273.  The products on the Ramadan menu are readily available for the MDOC to procure and source from approved suppliers. *Id*. at PageID.273.

The current Ramadan menus provide an average of at least 2,600 calories per day.  Panetta Decl. at PageID.273.  Removing the food that plaintiff objects to would drop the daily caloric value of the vegan Ramadan meal line to around 1,600 calories.  *Id*.   This caloric value falls short of the Sixth Circuit's suggested constitutional minimum of 2,000 to 2,500 calories. *See Welch*, 627 Fed. Appx. at 483.  Dietician Panetta points out that,

> [Plaintiff's] choice not to consume common items such as soy products, celery, peanut butter, and anything but navy beans substantially and unreasonably limits the items the MDOC could substitute on the menu to make up for the loss those calories.

Panetta Decl. at PageID.273-274.[5]

---

[5] Defendants contend that complying with plaintiff's request may pose difficulties for the MDOC.  However, defendants do not explicitly address the compelling-interest and least restrictive-means-test. *See Cavin* 927 F.3d at 458.  Rather, defendants present fragmentary arguments regarding potential security concerns that could arise by giving plaintiff an individualized diet. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

To prevail on his RLUIPA claim, plaintiff must establish that he would be underfed if he avoided the food which he claims violate the NOI's diet.  Plaintiff has failed to meet his burden.  Dietician Panetta stated that removing plaintiff's objectionable food would drop the daily caloric value to about 1,600 calories from the vegan Ramadan diet.  However, there is no evidence of how frequently plaintiff's caloric intake would exceed or fall below the 2,000 to 2,500 caloric average.   At his deposition, plaintiff testified that "I don't eat meat . . . so the menu I eat from is the vegan menu."  Heard Dep. at PageID.262.  While plaintiff does not eat meat, and presumably does not eat food prohibited by the NOI diet, he provides few specifics on exactly what he does eat.  That is relevant because "nutritional adequacy is a multi-factored concept" that turns on a balanced assessment of "daily caloric content, duration of the diet, and the nutritional needs of the prisoner," among other considerations.  *See Welch*, 627 Fed. Appx. at 483.

In determining whether plaintiff is underfed by the MDOC, the Court looks to plaintiff's other sources of food.  As discussed, plaintiff purchases a significant amount of food at the commissary.  As indicated by his commissary purchases from 2020 and 2021, plaintiff has the resources to supplement his prison-provided meals with commissary food on a regular basis.  According to plaintiff, this food meets the strict requirements for the NOI diet.  *See* ECF No. 41-15, PageID.308-318; ECF No. 41-16, PageID.320-332); Heard Decl. at PageID.431-432.  Plaintiff's use of his own funds to purchase commissary food which meets the NOI diet restrictions does not create a substantial burden on the exercise of his religion.  *See Courtney v. Burnett*, No. 1:07-cv-1130, 2010 WL 549220 at *15 (W.D. Mich. Feb. 10, 2010) ("[a] substantial burden is not established because the government's action makes the religious exercise more difficult or expensive") (citing *Living Water*, 258 Fed. Appx. at 739). *See Ackerman v. Washington*, 16 F.4th

170, 187 n.8 (6th Cir. 2021) (addressing some cases which support the proposition that food options at a commissary might render any burden on the prisoner as insubstantial).

Based on this record, plaintiff has failed to demonstrate that the existing vegan Ramadan menu places a substantial burden on his religious practice.  Accordingly, defendants should be granted summary judgment on plaintiff's RLUIPA claim.

## V.     Recommendation

For these reasons, I respectfully recommend that plaintiff's motion for summary judgment (ECF No. 27) be **DENIED**.

I further recommend that defendants' motion for summary judgment (ECF No. 40) be **GRANTED** as to all claims **except** for plaintiff's Fourteenth Amendment due process claim against defendant Dirschell.

I further recommend that defendants Bush and Chapman be **DISMISSED**.

Dated: February 10, 2026                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).